1   XAVIER BECERRA
    Attorney General of California
2   JANE ZACK SIMON
    Supervising Deputy Attorney General
3   AMY W. LO
    State Bar No. 194308
4   KEITH C. SHAW, State Bar No. 227029
    Deputy Attorneys General
5    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
6    Telephone:  (415) 510-3482
     Fax:  (415) 703-1234
7    E-mail:  Amy.Lo@doj.ca.gov
    *Attorneys for Defendant Dev*
8   *Appannagari Gnanadev*

9

10

11              IN THE UNITED STATES DISTRICT COURT

12         FOR THE CENTRAL DISTRICT OF CALIFORNIA

13                     EASTERN DIVISION

14

| | |
|---|---|
| **Hanna Rhee of Black Patients Matter,** | 5:19-cv-02223-RGK-SHK |
| Plaintiff, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT UNDER FED. R. CIV. P. 12(b)(1) and 12(b)(5) |
| **v.** | |
| **Dev Appannagari Gnanadev,** | |
| Defendant. | Hearing Date:      October 6, 2020<br>Hearing Time:     11:00 a.m.<br>Judge:  Hon. Shashi H. Kewalramani<br>Courtroom:   3 or 4 (Third Floor) |

15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Plaintiff in pro se, Hanna Rhee, ("Plaintiff") filed this lawsuit against Dev Appannagari Gnanadev, M.D. ("Defendant") for violation of her right to free speech under the First Amendment of the U.S. Constitution.  Defendant is a board member of the Medical Board of California ("MBOC").  On November 8, 2019, Plaintiff and Defendant attended a public meeting of the MBOC.  At the meeting, Plaintiff and Defendant expressed different interpretations of a graph shown by a guest speaker.  In essence, Plaintiff stated that there is a difference between ethnicity and race in epidemiologic studies.  After the meeting adjourned, Defendant walked over to Plaintiff and told Plaintiff repeatedly she should not publicly say that he does not know about diversity.  Plaintiff attempted to explain her position, but believed that she was making Defendant angrier.  When the two were approached by another person, Plaintiff quickly shook Defendant's hand and left the meeting room.  Before this Court is Defendant's Motion to Dismiss Plaintiff's Complaint.

**STATEMENT OF ALLEGATIONS**

The following factual allegations are taken from Plaintiff's Complaint.  On November 8, 2019, Plaintiff attended a quarterly public meeting held by the Medical Board of California MBOC at the Westin Hotel in downtown San Diego.  ECF No. 2, Plaintiff's Complaint, at 3:3-5.  Plaintiff regularly attends the MBOC's quarterly public meetings, which are held throughout California.  *Id.* at 3:7-8.  Plaintiff has been harassed at the MBOC public meetings in the past, so she always attends with a security team and other public health advocates.  *Id.* at 3:7-10.  On November 8, 2019,[1]  however, Plaintiff attended the public meeting for the first

_____

[1] Plaintiff's Complaint alleged twice that the meeting was held on June 8, 2019, which is inconsistent with her initial allegation that the meeting was held on November 8, 2019.  ECF No. 2, Complaint, at p. 2.  The MBOC's official website shows that the public meeting in San Diego was held on November 7-8, 2019.  See https://www.mbc.ca.gov/About_Us/Meetings/2019/

1    time without her security team, because "she has been attending these meetings

2    regularly for the past couple of years without incident." *Id.* at 3:11-13.  Plaintiff

3    also saw armed police officers at prior public meetings and decided that "her

4    private security team would be unnecessary." *Id.* at 3:13-14.

5         Plaintiff attended the MBOC public meeting on November 8, 2019 "as a

6    public advocate for Black Patients Matter, a grassroots organization network

7    addressing the chronic health disparity amongst underrepresented minority patient

8    populations." *Id.* at 3:5-7.  Defendant is a board member of the MBOC and also

9    attended the public meeting. *Id.* at 2:11, 3:18-19.  At the meeting, the Deputy

10   Director of the Center for Family Health, California Department of Public Health

11   made a presentation about "the ongoing healthcare disparity related to high cortisol

12   levels of African-American mothers who had just delivered their newborns." *Id.* at

13   3:15-18.  During the presentation, "Defendant commented from his Board seat at

14   the front of the meeting table, 'I am surprised to see the graph shows the cortisol

15   levels of Hispanic mothers is so close to the white mothers, but the black mothers is

16   still so high,' which the speaker attributed to social determinants of health from

17   chronic racism as a major contributing factor." *Id.* at 3:18-22 (quote from

18   Complaint).  After the presentation, the Chair of the MBOC opened the floor for

19   public comments related to the topic. *Id.* at 3:22-23.  Plaintiff stated, "In regards to

20   the comment made by a Board member about Hispanic mothers, although we of

21   course love and support our Hispanic communities, Hispanics are not considered to

22   be a race and are generally categorized as white unless they are not; race is usually

23   defined differently from ethnicity in epidemiologic studies, so therefore, it

24   shouldn't be surprising to anyone that the Hispanic mothers' curve approximate

25   white mothers." *Id.* at 3:23-4:1 (quote from Complaint).  At no time did Plaintiff

26   identify Defendant by name, as per meeting rules. *Id.* at 4:1-3.

27        After the meeting adjourned, Defendant walked towards Plaintiff, who was

28   sitting in the audience at the back of the meeting room. *Id.* at 4:4-6.  The other

1   public advocates left earlier in the day. *Id.* at 4:6.  Defendant repeatedly stated in

2   an angry tone, "Don't tell me I don't know about diversity!  Do not say this in

3   public or there will be problems!  You need to go home and think about what I am

4   telling you!" *Id.* at 4:7-8 (quote from Complaint).  "Plaintiff became fearful as it

5   was somewhat unprecedented for a sitting Board member to approach and verbally

6   reprimand a member of the public for commenting per MBOC rules at a state-

7   sanctioned public meeting." *Id.* at 4:9-12.  Shortly thereafter, Kerrie Webb (Webb),

8   an attorney for the MBOC, approached Plaintiff and Defendant. *Id.* at 4:12-13.

9   Plaintiff was grateful for Webb's presence and shook Webb's hand. *Id.* at 4:12-13.

10  "Plaintiff briefly again attempted to explain herself to Defendant, which caused his

11  anger to escalate even more whereupon Plaintiff became fearful, shook Defendant's

12  hand, and fled from the room." *Id.* at 4:13-16.

13        Plaintiff filed this lawsuit against Defendant in his individual and official

14  capacity. *Id.* at p. 2.  Plaintiff contended that Defendant violated Plaintiff's First

15  Amendment right to free speech when he approached Plaintiff after a public

16  meeting and repeatedly stated, "Don't tell me I don't know about diversity!  Do not

17  say this in public or there will be problems!  You need to go home and think about

18  what I am telling you!" *Id.* at 5:16-23.  Plaintiff believed that Defendant made the

19  statements to harass or bully Plaintiff "not to make comments which Defendant

20  does not approve of during the public comments section of a public state-sanctioned

21  meeting." *Id.* at 5:17-19.  Plaintiff alleged Defendant took advantage of the fact

22  that Plaintiff did not have her security team or patient advocate friends with her. *Id.*

23  at 5:19-20.  As a result of Defendant's actions, Plaintiff suffered mental anguish,

24  fear, and humiliation. *Id.* at 5:26-27.

25                      **STATEMENT OF RELIEF SOUGHT**

26        Defendant requests that this Court dismiss this case pursuant to Federal Rule

27  of Civil Procedure ("Rule") 12(b)(1) for lack of jurisdiction and 12(b)(6) for failure

28  to state a claim upon which relief may be granted.  Plaintiff sued Defendant in his

4

1  official capacity as a board member of the Medical Board of California, which is
2  prohibited under the Eleventh Amendment of the U.S. Constitution.  In addition,
3  Plaintiff failed to allege facts sufficient to state a claim for retaliation in violation of
4  the First Amendment of the U.S. Constitution.  Defendant is also entitled to
5  qualified immunity.

6                                   **STANDARDS OF REVIEW**

7  **I.       Rule 12(b)(1)**

8          A motion to dismiss under Rule 12(b)(1) authorizes dismissal for lack of
9  subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  The federal courts are courts
10 of limited jurisdiction, possessing only those powers authorized by the U.S.
11 Constitution and by statute.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511
12 U.S. 375, 377 (1994).  The presumption is that the federal court is without
13 jurisdiction.  *Id.*  The party seeking to invoke the jurisdiction of the federal court
14 bears the burden of proving that all jurisdictional prerequisites have been met.  *Id.*

15 **II.      Rule 12(b)(6)**

16         A motion to dismiss under Rule12(b)(6) challenges the sufficiency of the
17 allegations in a complaint.  *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d
18 578, 581 (9th Cir. 1983).  When reviewing a complaint under Rule 12(b)(6), the
19 district court should accept all allegations of material fact as true and construe those
20 facts in the light most favorable to the plaintiff.  *Clegg v. Cult Awareness Network*,
21 18 F.3d 752, 754 (9th Cir. 1994).  Courts must "construe pro se complaints
22 liberally."  *Nichols v. Brown*, 945 F.Supp.2d 1079, 1086 (C.D. Cal. 2013).

23         "To survive a motion to dismiss, a complaint must contain sufficient factual
24 matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"
25 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,
26 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a 'probability
27 requirement,' but it asks for more than a sheer possibility that a defendant has acted
28 unlawfully."  *Id.*  The court need not accept as true unreasonable inferences,

1   unwarranted deductions of fact, or conclusory legal allegations cast in the form of

2   factual allegations. *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1462

3   (C.D.Cal.1996).

4                                   **ARGUMENT**

5   **I.    Plaintiff's Lawsuit for Damages Against Defendant Acting in His Official Capacity Is Barred By the Eleventh Amendment.**

6          The party seeking to invoke the jurisdiction of the federal court bears the

7   burden of proving that all jurisdictional prerequisites have been met. *Kokkonen*,

8   511 U.S. at 377.  A plaintiff's failure to establish subject matter jurisdiction may be

9   challenged under Rule 12(b)(1).

10         The Eleventh Amendment bars any action in federal court against a State, its

11  agencies or departments, regardless of the nature of the relief sought. *Pennhurst*

12  *State School & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984).  "[E]ach State is a

13  sovereign entity in our federal system; and . . . it is inherent in the nature of

14  sovereignty not to be amenable to the suit of an individual without its consent."

15  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996).  A suit against a state

16  official in his or her official capacity is "no different from a suit against the State

17  itself" and is also barred under the Eleventh Amendment. *Will v. Michigan Dep't*

18  *of State Police*, 491 U.S. 58, 71 (1989).

19         In this case, Plaintiff sued Defendant in his official capacity for violation of

20  her First Amendment rights.  ECF No. 2 at p. 2.  Plaintiff alleges that she suffered

21  mental anguish, fear, and humiliation and seeks damages in the amount of $10,000.

22  *Id.* at pp. 5-6.  Plaintiff has not and cannot meet her burden to establish federal

23  subject matter jurisdiction over Defendant in his official capacity.  Accordingly,

24  Defendant's Motion to Dismiss should be granted insofar as Plaintiff's lawsuit

25  against Defendant in his official capacity is barred by the Eleventh Amendment.

26  ///

27  ///

28  ///

**II.    Plaintiff Failed to State a Claim for Violation of the First Amendment Because Defendant Did Not Subject Plaintiff to Any Adverse Action That Would Chill a Person of Ordinary Firmness From Her First Amendment Rights.**

Plaintiff contends that Defendant spoke angrily at her in retaliation for a comment that she made at the MBOC public meeting on November 8, 2019.  ECF 2 at p. 5.  To state such a claim, Plaintiff must allege that (1) she engaged in constitutionally protected activity; (2) as a result she was subjected to adverse action by the Defendants that would chill a person of ordinary firmness from continuing to engage in that protected activity; and (3) there was a substantial causal relationship between the protected activity and the adverse action.  *Westfall v. City of Crescent City*, No. CV 10-5222 NJV, 2011 WL 4024663, at *4 (N.D. Cal., Sept. 9, 2011).  "The alleged chilling effect, however, must past an objective test - whether the alleged behavior 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Vargas v. Berkeley Unified Sch. Dist.*, No. 16-CV-06634-WHO, 2017 WL 5000345, at *3 (N.D. Cal. Nov. 2, 2017) (quoting *Mendocino Envt'l Center v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999)).

Plaintiff alleged that Defendant spoke angrily to her in response to her criticism of Defendant's comment at a public meeting.  ECF No. 2 at 4:6-8, 4:13-15.  In particular, although Plaintiff did not identify Defendant by name, Plaintiff publicly disagreed with an observation that Defendant made during a guest speaker's presentation about the difference in cortisol levels between white and minority mothers who had just delivered newborns.  *Id.* at 3:18-4:3.  The comments made by Plaintiff and Defendant addressed the substance of the guest speaker's presentation.  *See id.* at 3:15-18.  Plaintiff alleged after the public meeting ended, Defendant walked over to Plaintiff, who was sitting alone, and told her in an angry tone not to say that he did not understand diversity.  *See id.* at 4:7-8.  Defendant repeated this statement several times while Plaintiff attempted to explain herself.

*See id.* at 4:7-8, 4:13-16.  After an MBOC attorney approached Plaintiff and Defendant, Plaintiff attempted to explain herself again, but felt that she caused Defendant to become angrier.  *Id.* at 4:13-15.  Plaintiff shook hands with Defendant and the attorney and left the meeting room.  *Id.* at 4:13-16.

The Ninth Circuit found that speech in response to speech does not constitute a First Amendment violation.  *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998).  In *Nunez*, a police officer sued his employer for failing to promote him to the rank of lieutenant.  *Id.* at 869.  The officer claimed that after he made complaints to other governmental agencies that his employer had a practice of promoting unqualified applicants, his supervisors retaliated against him by scolding him and threatening to transfer or dismiss him.  *Id.* at 874.  The Ninth Circuit affirmed the district court's grant of summary judgment on the grounds that "[a]ll [the officer] has shown is that he was bad-mouthed and verbally threatened.  It would be the height of irony, indeed, if mere speech, in response to speech, could constitute a First Amendment violation."  *Id.* at 875.

In this case, Defendant neither bad-mouthed nor verbally threatened Plaintiff. To the contrary, the remarks of both parties addressed the subject of a guest speaker's presentation.  ECF No. 2 at 3:15-4:1.  Defendant stated during the presentation that he was surprised at a graph showing that Hispanic mothers had cortisol levels close to white mothers while cortisol levels for African-American mothers was still so high.  *Id.* at 3:18-21.  During the public comment portion of the meeting, Plaintiff stated that the graph should not be surprising to anyone because "Hispanics are not considered to be a race and are generally categorized as white unless they are; race is usually defined differently from ethnicity in epidemiologic studies."  *Id.* at 3:25-4:1.  After the meeting adjourned, Defendant walked to Plaintiff where she sat in the audience and told her not to tell him publicly that he does not know about diversity and to think about what he said.  *Id.* at 4:4-9. Plaintiff alleged that she tried to explain herself but Defendant persisted in his

1  statements. *Id.* at 4:13-16.  Plaintiff shook Defendant's hand and left the room.

2  Plaintiff's contention that Defendant's post-meeting statement would chill a

3  person of ordinary firmness from disagreeing with him at a public meeting of the

4  MBOC is based on her subjective interpretation of Defendant's actions.  For

5  example, Plaintiff alleged that Defendant intended to "intimidate, argue, order

6  [and/or] harass" Plaintiff from stating or suggesting "Defendant does not know the

7  difference between race and ethnicity publicly."  ECF No. 2 at p. 2.  Plaintiff

8  further alleged that Defendant "angrily accosted Plaintiff about her public

9  comments" and that he "verbally reprimand[ed]" her.  *Id.* at 4:6-11.  Plaintiff

10  speculated that "Defendant took advantage of the Plaintiff being alone for the first

11  time without her security team or other advocate friends present." *Id.* at 5:19-20.

12  Plaintiff assumed that Defendant was angry at her public comment and grew

13  angrier as she attempted to explain her position to him. *Id.* at 4:6, 4:13-15.  These

14  allegations are irrelevant, however, because whether an action has a chilling effect

15  is evaluated by an objective standard. *Vargas,* 2017 WL 5000345, at *3.  Stripping

16  Plaintiff's Complaint of its emotionally charged language, Plaintiff's allegations

17  amount to mere speech in response to speech and is not actionable.

18  **III.   Defendant Is Entitled to Qualified Immunity.**

19  Qualified immunity "protects government officials 'from liability for civil

20  damages insofar as their conduct does not violate clearly established statutory or

21  constitutional rights of which a reasonable person would have known.'" *Pearson v.*

22  *Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800,

23  818 (1982)).  "Qualified immunity is 'an entitlement not to stand trial or face the

24  other burdens of litigation.'" *Hopkins v. Bonvicino*, 573 F.3d 752, 762 (9th Cir.

25  2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526).  "Unless the plaintiff's

26  allegations state a claim of violation of clearly established law, a defendant

27  pleading qualified immunity is entitled to dismissal before the commencement of

28  discovery." *Mitchell*, 472 U.S. at 526.  "The district court must decide a defense of

qualified immunity from civil rights violations at the earliest opportunity since qualified immunity is an immunity from suit rather than a mere defense to liability." *Orozco v. County of Yolo*, 814 F.Supp. 885, 895 (E.D. Cal. 1993); *see e.g., Nichols v. Brown*, 945 F.Supp.2d 1079, 1098–1099 (C.D. Cal. 2013) (motion to dismiss granted).

To determine whether a governmental official is entitled to qualified immunity, the district court analyzes two distinct questions: (1) whether the factual allegations establish that the defendant's conduct amounted to a constitutional violation; and (2) whether at the time of the violation, the constitutional right was clearly established such that a reasonable government official would have known that his conduct was unlawful in the situation he confronted. *Williams v. County of Monterey*, No. 19-CV-01811-BLF, 2020 WL 353552, at *5 (N.D. Cal. Jan. 21, 2020). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Nichols,* 945 F.Supp.2d at 1098-1099 (quoting *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)). The court may decide "'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Williams*, 2020 WL 353552, at *5 (quoting *Pearson*, 555 U.S. at 242).

Defendant's conduct did not amount to a violation of Plaintiff's First Amendment rights, as discussed in the preceding section. Addressing the second prong of the qualified immunity analysis, there was no clearly established law that a reasonable government official in Defendant's position would have known that his conduct was unlawful in the situation he confronted. To the contrary, in the *Nunez* case*,* the Ninth Circuit stated, "It would be the height of irony, indeed, if mere speech, in response to speech, could constitute a First Amendment violation." *Nunez*, 147 F.3d at 875. Applying *Nunez* to the case at bar, construing the factual

allegations in favor of Plaintiff, Defendant approached Plaintiff immediately after a public meeting about their conflicting opinions about a graph shown by a guest presenter.  Plaintiff's security team and patient advocate friends were not with her. Defendant told Plaintiff repeatedly not to state publicly that he does not know about diversity, the subject about which they publicly disagreed, or "there will be problems."  Defendant told Plaintiff, "You need to go home and think about what I am telling you."  In response, Plaintiff attempted to explain herself.  After an attorney with the MBOC approached the two, Plaintiff again attempted to explain herself but felt that her statements made Defendant angrier.  Plaintiff shook hands with the attorney and Defendant and left the room.  Under these circumstances, no reasonable official in Defendant's position would understand that he or she was doing violates Plaintiff's right to free speech.  Accordingly, Defendant is entitled to qualified immunity as to Plaintiff's claim for retaliation in violation of the First Amendment.

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests this Court to dismiss this lawsuit against Defendant acting in his official capacity based on Eleventh Amendment immunity.  Defendant further respectfully requests this Court grant Defendant's Motion to Dismiss Plaintiff's Complaint on the grounds that Plaintiff failed to state a claim upon which relief can be granted and that Defendant is entitled to qualified immunity.

///

///

///

///

///

///

///

Dated:  August 28, 2020

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
JANE ZACK SIMON
Supervising Deputy Attorney General
KEITH C. SHAW
Deputy Attorney General


*/s/ Amy W. Lo*

AMY W. LO
Deputy Attorney General
*Attorneys for Defendant Dev Appannagari Gnanadev*