UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANNA RHEE,<br><br>Plaintiff,<br><br>v.<br><br>DEV APPANNAGARI GNANADEV,<br><br>Defendant. | Case No. 5:19-cv-02223-RGK (SHK)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO GRANT DEFENDANT'S MOTION TO DISMISS AND DENY DEFENDANT'S MOTION TO STRIKE** |

This Report and Recommendation ("R&R") is submitted to the Honorable R. Gary Klausner, United States District Judge, under 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**I.     SUMMARY OF RECOMMENDATION**

On August 28, 2020, Defendant Dev Appannagari Gnanadev ("Defendant") filed a Motion to Dismiss Plaintiff's Complaint ("MTD") and a Motion to Strike Allegations from the Complaint ("MTS" and together with the MTD, "Motions"). Electronic Case Filing Numbers ("ECF Nos.") 25, MTD; 26, MTS. On September 24, 2020, Plaintiff Hanna Rhee ("Plaintiff") filed her Opposition to the Motions ("Opposition" or "Opp'n"). ECF No. 28, Opp'n. Per

the Court's scheduling order, Defendant was not permitted to file a reply. See ECF No. 27, Min. at 1 ("Unless the Court orders otherwise, Defendant shall not file a reply to Plaintiff's opposition."). The matter stands ready for decision.

As explained below, the undersigned Magistrate Judge recommends that Defendant's MTD be GRANTED, Defendant's MTS be DENIED as moot, and Plaintiff's Complaint be DISMISSED, without prejudice.

## II. BACKGROUND

### A. Procedural History

On December 6, 2019, Plaintiff, proceeding pro se, filed a Complaint ("Complaint" or "Compl.") under 42 U.S.C § 1983 ("§ 1983"), against Defendant, a board member of the Medical Board of California ("MBOC"), in both his individual and official capacity. ECF No. 2, Compl. at 2. Plaintiff alleges that Defendant violated Plaintiff's First Amendment right to freedom of speech. Id. at 2.

On July 27, 2020, Plaintiff filed a notice of mediation with the Court indicating she had invited Defendant to a mediation and had enlisted the help of a California Department of Consumer Affairs mediator. ECF No. 24, Notice of Mediation Offer. Plaintiff indicated that Defendant had not responded to Plaintiff's offer of mediation. Id.

A month later, Defendant filed the instant Motions.

### B. Plaintiff's Complaint

In her Complaint, Plaintiff makes a single claim that Defendant violated Plaintiff's First Amendment right to freedom of speech by "by accosting[,] arguing[,] ordering[,] harassing[, and] bullying Plaintiff not to make comments which Defendant does not approve of during the public comments section of a public state-sanctioned meeting." ECF No. 2, Compl. at 5. Plaintiff explains that Defendant "us[ed] his position as a MBOC board member at a public meeting to intimidate[,] argue[,] order[, and] harass Plaintiff not to state nor suggest

Defendant does not know the difference between race and ethnicity publicly." Id. at 2.

Plaintiff's claim arises from a single incident. Plaintiff claims to be a public advocate for Black Patients Matter[1] and has been regularly attending MBOC's quarterly meetings that take place throughout the state of California. Id. at 3. On November 8, 2019,[2] Plaintiff attended one of MBOC's quarterly meetings at the Westin Hotel in downtown San Diego. Id. at 3. On the second day of the public meeting, one of the speakers "presented and discussed the ongoing healthcare disparity related to high cortisol levels of African-American mothers who had just delivered newborns." Id. In response to the speaker, Defendant commented that "I am surprised to see the graph shows the cortisol levels of Hispanic mothers is so close to the white mothers, but the black mothers is still so high[.]" Id. (internal quotations omitted).

When the MBOC Chair opened the floor for public comments, Plaintiff stated the following:

> In regards to the comment made by a [MBOC] [b]oard member about Hispanic mothers, although we of course love and support our Hispanic communities, Hispanics are not considered to be a race and are generally categorized as white unless they are not; race is usually defined differently from ethnicity in epidemiologic studies, so therefore

---

[1] Plaintiff explains that Black Patients matter is "a grassroots organization network addressing the chronic health disparity amongst underrepresented minority patient populations." ECF No. 2, Compl. at 3.

[2] The Complaint is unclear about whether the incident occurred on November 8, 2019 or June 8, 2019 as Plaintiff refers to both dates. See ECF No. 2, Compl. at 3. However, Defendant noted that the MBOC's official website indicates that the MBOC's quarterly meeting in San Diego occurred on November 7-8, 2019. ECF No. 25-1, MTD at 2 n.1; see also Medical Board of California, 2019 Board and Committee Meetings, https://www.mbc.ca.gov/About_Us/Meetings/2019/ (last accessed Mar. 11, 2021). Therefore, the Court will refer to incident as occurring on November 8, 2019.

3

|   |   |
|---|---|
| 1 | it shouldn't be surprising to anyone that the Hispanic mothers' curve |
| 2 | approximate white mothers. |

Id. at 3-4. Plaintiff notes that she did not "identify the [MBOC] [b]oard member by name[.]" Id. at 4.

After the meeting adjourned, Defendant walked across the room to Plaintiff, who was sitting alone. Id. Defendant "angrily accosted Plaintiff about her public comments" and "repeatedly stat[ed] 'Don't tell me I don't know about diversity! Do not say this in public or there will be problems! You need to go home and think about what I am telling you!'" Id. This confrontation caused Plaintiff to become fearful because "it is somewhat unprecedented for a sitting [MBOC] Board member to approach and verbally reprimand a member of the public for commenting[,] per MBOC rules at a state-sanctioned public meeting." Id.

Shortly thereafter, a MBOC attorney named Kerrie Webb approached both parties, and "Plaintiff quickly shook her hand [and was] grateful for her presence." Id. Plaintiff "attempted to explain herself to Defendant[,]" which caused Defendant's anger to escalate and Plaintiff to become fearful again, so Plaintiff "shook Defendant's hand[] and fled from the room." Id.

As a result of Defendant's conduct, Plaintiff claims that she "suffers with mental anguish, fear, and humiliation." Id. at 6. Plaintiff seeks relief of $10,000 in damages[.]" Id. at 6.

C. **Defendant's Motions**

1. **Defendant's MTD**

In the MTD, Defendant asks the Court to dismiss Plaintiff's Complaint on three grounds: (1) Plaintiff's claim against Defendant in his official capacity is barred by the Eleventh Amendment; (2) Plaintiff failed to state a First Amendment claim for violation of freedom of speech; and (3) Defendant is entitled to qualified immunity. ECF No. 25-1, MTD at 11.

///

4

1    First, Defendant appears to argue that Plaintiff's claim against Defendant in
2    his official capacity as a member of MBOC is barred by the Eleventh Amendment
3    because it is essentially a claim against the State of California.³ Id. at 6. Although it
4    is not explicitly stated in the MTD, Defendant appears to argue that the MBOC is
5    an agency of the State of California. See id. Because California has not consented
6    to action in federal court, therefore, Defendant argues that Plaintiff's claim against
7    Defendant in his official capacity is barred by the Eleventh Amendment. Id.

8    Second, Defendant argues that Plaintiff has failed to state a claim under the
9    First Amendment for violation of her freedom of speech. Id. at 7. Specifically,
10   Defendant argues that both Defendant's and Plaintiff's speech were all in response
11   to the MBOC guest speaker's presentation, which is also speech, and thus
12   Defendant did not violate Plaintiff's First Amendment rights because "speech in
13   response to speech does not constitute a First Amendment Violation." Id. at 8
14   (citing Nunez v. City of Los Angeles, 147 F.3d 867, 875 (9th Cir. 1998)).
15   Defendant also argues that Plaintiff has failed to state a First Amendment claim
16   because she has not alleged that Defendant's conduct had a chilling effect on her
17   speech, which is an element of a First Amendment claim. Id. at 9.

18   Third, Defendant argues that Plaintiff's claim against Defendant must be
19   dismissed because Defendant is entitled to qualified immunity as a government
20   official through his affiliation with MBOC. Id. at 9-10. Defendant argues that,
21   although "there [is] no clearly established law that a reasonable government official
22   in Defendant's position would have known that his conduct was unlawful in the

---

³ The Court notes that, while making this argument, Defendant states that Plaintiff failed to meet the burden of establishing federal subject matter jurisdiction. ECF No. 25-1, MTD at 6. It appears to the Court that Defendant is conflating a bar on Plaintiff's official capacity claims with Plaintiff's federal question jurisdiction, as the Defendant does not clarify how those two issues are related. See id. Because Defendant does not explain how Plaintiff's First Amendment claim would prohibit the Court's subject matter jurisdiction as a federal question, the Court will interpret Defendant's argument as only that Plaintiff's official capacity claims against Defendant are barred by the Eleventh Amendment.

5

situation he confronted[,]" "no reasonable official in Defendant's position would understand that [what] he or she was doing violates Plaintiff's right to free speech." Id. at 10-11.

### D. Defendant's MTS

In the MTS, Defendant seeks to strike the sole allegation of "Black Patients Matter" from the Complaint. ECF No. 26-1, MTS at 2. Defendant argues that, while Plaintiff states in her Complaint she is bringing this lawsuit as "Hanna Rhee of *Black Patients Matter*[,]" the case at hand is "to vindicate [Plaintiff's] own constitutional rights[]" and not of the group Black Patients Matter. Id. at 2-3 (emphasis in the original). Because Plaintiff is not qualified to represent Black Patients Matter in this litigation, as well as the fact that the Complaint does not allege any violations of Black Patients Matter's constitutional rights, Defendant requests that the Court strike the reference to "of Black Patients Matter" from the Complaint. Id. at 3.

### E. Plaintiff's Opposition To The Motions

While Plaintiff's Opposition states that it is addressing both of Defendant's Motions, Plaintiff appears to make no arguments against Defendant's MTS. See ECF No. 28, Opp'n. However, Plaintiff makes several arguments against Defendant's MTD.

First, Plaintiff appears to argue that Defendant's conduct was not speech in response to speech, but rather a direct violation of Plaintiff's First Amendment rights. Id. at 2.

Second, Plaintiff argues that the Eleventh Amendment does not provide a blanket immunity protecting state authorities from liability; rather, "[t]he main factor is whether damages would come out of the state treasury[.]" Id. at 3. Plaintiff points out that she had sued Defendant in both his official and individual capacities, and states that she is "willing to forego a monetary award in exchange

for a simple apology and a promise from [] Defendant not to accost patient advocates again." Id.

Third, Plaintiff refutes Defendant's argument that Plaintiff failed to demonstrate her speech was chilled, as required to state a First Amendment claim. Id. Plaintiff argues that, as a "powerful wealthy surgeon member of the MBOC who was at one time the President of MBOC[,]" Defendant's conduct "no doubt would 'chill' an average person . . . from continuing to engage in [the] protected activity [of speaking at a public meeting.]" Id.

Fourth, Plaintiff also makes a new argument that Defendant's conduct "was in retaliation for Plaintiff filing an ongoing federal civil rights lawsuit against [MBOC.]" Id. (citing to Rhee v. MBOC, et al., No. 2:18-cv-00105-KJM-DMC (E.D. Cal. Jan. 18, 2018)). Plaintiff notes that she has "been an outspoken advocate of minority patient rights and a critic of MBOC" and argues that Defendant's conduct in "bad-mouth[ing]" and verbally threatening Plaintiff amounts to retaliation. Id. at 3-4.

Fifth, Plaintiff argues that Defendant is not entitled to qualified immunity because he "knowingly acted in direct violation of California state law, so as to use his status as past President of MBOC and current Board member to intimidate members of the public knowing he could get away with it and that there would be no repercussions."[4] Id. at 4.

Finally, Plaintiff appears to take issue with how Defendant had characterized the background of the case to the Court. Specifically, Plaintiff states that the "MBOC meetings are not a benign gathering of opposing voices[,]" but rather a "contentious" gathering that requires "multiple armed police officers [] present to

---

[4] The California state law that Plaintiff refers to is the Bagley-Keene Open Meeting Act, Cal. Gov. Code §§ 11120-32. ECF No. 28, Opp'n at 4.

ensure the safety of all attendees."[5]  Id. at 2.  Plaintiff also disagrees with Defendant's "attempt to minimize the violations by using descriptive terms of 'inferences' and 'deductions' when in fact Defendant outright ordered Plaintiff to shut up and threatened her by warning 'or there will be problems.'"  Id.  However, Plaintiff does appear to agree with Defendant that Defendant is a government official.  Specifically, Plaintiff states that Defendant "is a current, active MBOC member appointed by the Governor of California[]" and, "[a]t the time of the violation, Defendant was present at the meeting as an official MBOC member . . . performing the duties in his official capacity[.]"  Id. at 2-3.

### III.   LEGAL STANDARDS

#### A.   Motion To Dismiss Under Rule 12(b)(6)

Under Rule 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations omitted).  This does not require a pleading to include detailed factual allegations and a "'claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

---

[5] The Court also notes that Plaintiff argues that Defendant's characterization that he "attended" the MBOC meeting "is akin to describing a police officer shooting a peaceful demonstrator in the back as 'both attending a gathering downtown.'"  ECF No. 28, Opp'n at 2.  The Court admonishes Plaintiff for, and cautions against further using, extreme hyperbolic language, as it is unreasonable to equate an alleged violation of free speech at a public meeting with lethal harm.

Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

However, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Ebner v. Fresh, Inc., 838 F.3d 958, 963 (9th Cir. 2016) (as amended) (quoting Iqbal, 556 U.S. at 679).

To the extent a factual allegation meets this standard, a court must accept the allegation as true at the pleading stage. Hamilton v. Brown, 630 F.3d 889, 892-93 (9th Cir. 2011); see also Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008) (finding that courts must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.") (citation omitted). Factual allegations "that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" do not meet the standard of facial plausibility and will not be accepted as true. In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (citation and internal quotation marks omitted); see also Fed. R. Civ. P. 8(e) (stating that "[p]leadings must be construed so as to do justice").

In analyzing a Rule 12(b)(6) motion, "the Court is generally limited to the face of the complaint, materials incorporated into the complaint by reference, and matters suitable for judicial notice, as well as exhibits attached to the complaint." Ismail v. County of Orange, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012), aff'd, 676 F. App'x 690 (9th Cir. 2017) (internal citations omitted).

Finally, if the Court finds the complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Leave to amend should be

granted if it appears possible for a plaintiff to correct the defects in the complaint, especially if the plaintiff is pro se. Id. at 1130-31; Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995).  However, if, after careful consideration, it is clear a complaint cannot be cured by amendment, a court may dismiss without leave to amend.  Cato, 70 F.3d at 1107-11; see also Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002) (upholding dismissal without leave to amend where additional facts would not establish elements of claim).

### B. Section 1983 Claim

To state a claim for a civil rights violation under § 1983, a plaintiff must allege that: (1) a particular defendant, (2) acting under color of state law, (3) deprived plaintiff of a right guaranteed under the U.S. Constitution or a federal statute. 42 U.S.C. § 1983; see West v. Atkins, 487 U.S. 42, 48 (1988).  Suits against government officials under § 1983 in their individual capacities "seek to impose personal liability upon a government official for actions he takes under color of state law." Kentucky v. Graham, 473 U.S. 159, 165 (1985).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of [§] 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Section 1983 requires that plaintiffs show that a person's act or omission constituted a breach of duty that proximately caused the alleged constitutional injury. Mendez v. Cty. of Los Angeles, 897 F.3d 1067, 1074 (9th Cir. 2018).

For conduct to constitute an action taken "under color of law," "the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible[.]" West, 487 U.S. at 49 (internal quotations omitted).

/ / /

/ / /

## IV. DISCUSSION

### A. Plaintiff's Official Capacity Claim Against Defendant Is Barred By The Eleventh Amendment.

The Eleventh Amendment to the United States Constitution sets out the principle of State sovereign immunity, providing:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. In other words, "[t]he Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state." Brooks v. Sulphur Springs Valley Elec. Co-op., 951 F.2d 1050, 1053 (9th Cir. 1991) (citations omitted).

An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Graham, 473 U.S. at 166 (citation omitted); see also Mitchell v. Washington, 818 F.3d 436, 442 (9th Cir. 2016) ("The Eleventh Amendment bars claims for damages against a state official acting in his . . . official capacity."). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." Graham, 473 U.S. at 166. This means that when an officer is accused of violating someone's constitutional rights, under § 1983, in their official capacity, the real defendant is their employer.

However, states, state agencies, and state officials sued in their official capacities are not persons subject to civil rights claims for damages under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 64–66 (1989); Hafer v. Melo, 502 U.S. 21, 26-27, 30 (1991) (clarifying that the Eleventh Amendment does not bar suits against state officials sued in their individual capacities nor for prospective injunctive relief against state officials sued in their official capacities).

///

To overcome the Eleventh Amendment bar on federal jurisdiction over suits by individuals against a State and its instrumentalities, either the State must have "unequivocally expressed" its consent to waive its sovereign immunity or Congress must have abrogated it. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99–100 (1984); Virginia Office for Protect. & Advocacy v. Stewart, 563 U.S. 247, 253-54 (2011). California has consented to be sued in its own courts pursuant to the California Tort Claims Act, but such consent does not extend to consent to suit in federal court. See BV Eng'g v. Univ. of Cal., Los Angeles, 858 F.2d 1394, 1396 (9th Cir. 1988); see also Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985) (holding that Art. III, § 5 of the California Constitution did not constitute a waiver of the State's Eleventh Amendment immunity). Further, the U.S. Congress has not abrogated, or waived, State sovereign immunity against suits under § 1983.

Here, because Plaintiff is suing Defendant in his official capacity as a member of MBOC, Plaintiff is essentially suing the entity MBOC. However, "the Medical Board of California, as a state agency, is entitled to sovereign immunity." Yoonessi v. Albany Med. Ctr., 352 F. Supp. 2d 1096, 1104 (C.D. Cal. 2005); see also Warne v. City & Cty. of San Francisco, No. 16-CV-06773-JSC, 2017 WL 912269, at *5 (N.D. Cal. Mar. 8, 2017) ("The Medical Board of California is a 'state agency' for purposes of sovereign immunity.") (citing Forster v. Cty. of Santa Barbara, 896 F.2d 1146, 1149 (9th Cir. 1990)); Cal. Bus. & Prof. Code §§ 2000, et seq. Moreover, MBOC has not consented to suit against it, and Plaintiff does not indicate otherwise. Therefore, the Court agrees with Defendant in that Plaintiff's claim against Defendant in his official capacity is barred by the Eleventh Amendment.

Plaintiff argues that the Eleventh Amendment does not automatically provide immunity to state authorities. ECF No. 28, Opp'n at 3 (citing to Moor v. Cty of Alameda, 411 U.S. 693 (1973)). Rather, Plaintiff argues that immunity under

the Eleventh Amendment turns on "whether the damages would come out of the state treasury . . . [so] [i]f the state would have to pay for damages from the state treasury, then the [Eleventh] Amendment would serve as a shield from liability." Id. (citing to Hess v. Port Authority Trans-Hudson Corp., 513 U.S. 30 (1994)). However, both arguments fail.

First, Plaintiff is correct that the Eleventh Amendment does not provide blanket immunity—as noted above, if the state consented to being sued in federal court, then there is no Eleventh Amendment immunity. See Brooks, 951 F.2d at 1053. Plaintiff's citation to Moor is also not helpful. In Moor, the Supreme Court addressed, in part, whether there was "a federal cause of action [] against a municipality under 42 U.S.C. §§ 1983 and 1988 for the actions of its officers which violate an individual's federal civil rights where the municipality is subject to such liability under state law[,]" and concluded that there was not. Moor, 411 U.S. at 694, 710. Here, Plaintiff makes no argument that MBOC would be liable under California law, and even so, under Moor, Plaintiff's claims against MBOC would still be barred because California did not consent to be sued in federal court. See id. at *709-10.

Second, Plaintiff's reading that Eleventh Amendment immunity is determined by the source of judgments is incorrect. In Hess, the Supreme Court utilized the "state treasury factor"—specifically, whether any federal-court judgments would be paid out of the state treasury—to determine whether an wholly owned subsidiary of the Port Authority of New York and New Jersey qualified as a state agency that was entitled to Eleventh Amendment Immunity. Hess, 513 U.S. at 47-51. However, in the case at hand, there is no question as to whether the MBOC is a state agency, see Yoonessi, 352 F. Supp. 2d at 1104, and Plaintiff does not contend otherwise.

///

Accordingly, the Court recommends granting Defendant's MTD in so far as Defendant argues that Plaintiff's claim against Defendant in his official capacity should be dismissed without prejudice.

### B. Plaintiff Fails To State A Claim Against Defendant For A Violation Of Plaintiff's First Amendment Rights.

To establish a First Amendment violation in the context of a claim pursuant to § 1983, a plaintiff must show that a defendant "by his actions . . . deterred or chilled the plaintiff's political speech and such deterrence was a substantial or motivating factor in the defendant's conduct." Mendocino Envtl. Ctr. v. Mendocino Cty., 192 F.3d 1283, 1300 (9th Cir. 1999). This requires a "demonstration that defendants intended to interfere" with a plaintiff's First Amendment rights. Id. Thus, the proper inquiry is "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Id.

Here, Plaintiff has also sued Defendant in his individual capacity, alleging that Defendant violated her First Amendment right to free speech because, in response to her comment during the MBOC meeting, Defendant approached and "accosted" Plaintiff by telling Plaintiff "Don't tell me I don't know about diversity!  Do not say this in public or there will be problems!  You need to go home and think about what I am telling you!" ECF No. 2, Compl. at 4. However, this singular event is insufficient to state a First Amendment claim. The Complaint does not make any allegations that Defendant intended to interfere with Plaintiff speaking at all during the MBOC meeting. Instead, Defendant appears to, albeit angrily, disagree with one comment that Plaintiff made in response to Defendant's comment. Additionally, there is no indication that Defendant's conduct chilled or deterred Plaintiff from making comments during MBOC's public meetings. Plaintiff attempts to argue that Defendant's social status, as well as the "unprecedented" nature of this incident, would "no doubt" chill and deter a

1  person of ordinary firmness from speaking at an MBOC meeting, ECF No. 28,
2  Opp'n at 3, but Plaintiff's other allegations suggest otherwise.  Specifically, the fact
3  that the MBOC meetings have "become quite contentious" enough to need police
4  officers during the meeting, id., as well as Plaintiff's own need for her private
5  security team, ECF No. 2, Compl. at 3, both suggest that angry disagreements
6  during MBOC meetings are not out of the norm and Plaintiff still was willing to
7  make a public comment.  But most crucially, disparaging verbal comments that
8  amount to "berating and shaming [are] not . . . cognizable as a First Amendment
9  violation."  Wagda v. Town of Danville, No. 16-CV-00488-MMC, 2016 WL
10 6160160, at *5 (N.D. Cal. Oct. 24, 2016); see also Waters v. Hollywood Tow Serv.,
11 No. CV 07-7568 CAS (AJW), 2010 WL 11465238, at *20 (C.D. Cal. July 27, 2010),
12 report and recommendation adopted sub nom. Waters v. Hollywood Tow Serv.,
13 Inc., No. CV 07-7568 CAS (AJW), 2010 WL 11465405 (C.D. Cal. Aug. 31, 2010),
14 aff'd, 584 F. App'x 408 (9th Cir. 2014) (unspecified verbal threats of violence are
15 insufficient to state a First Amendment claim with facial plausibility).
16         To the extent that Plaintiff is attempting to argue that Defendant's conduct
17 was "in retaliation for Plaintiff filing an ongoing federal civil rights lawsuit against
18 [MBOC,]" ECF No. 28, Opp'n at 3-4, Plaintiff's First Amendment retaliatory
19 claim also fails.  "To demonstrate retaliation in violation of the First Amendment,
20 [Plaintiff] must ultimately prove first that [Defendants] took action that would chill
21 or silence a person of ordinary firmness from future First Amendment activities.
22 The second requirement is [that] [Plaintiff] must ultimately prove that
23 [Defendants'] desire to cause the chilling effect was a but-for cause of
24 [Defendants'] action."  Dietrich v. John Ascuaga's Nugget, 548 F.3d 892, 900–01
25 (9th Cir. 2008) (brackets in original and ellipses omitted) (quoting Skoog v. Cty. of
26 Clackamas, 469 F.3d 1221, 1231-32 (9th Cir. 2006)).  There is nothing to suggest
27 that Defendant even knew about Plaintiff's other ongoing lawsuit against MBOC,
28 let alone that other lawsuit was the cause of Defendant's conduct towards Plaintiff.

Accordingly, the Court recommends that Defendant's MTD be granted in so far as Defendant argues that Plaintiff's remaining First Amendment claim against Defendant should be dismissed without prejudice.

### C. Though Defendant May Be Entitled To Assert Qualified Immunity When The Court Must Make A Factual Determination, The Court Declines To Dismiss The Complaint Based On Qualified Immunity Now.

"Qualified immunity protects government officers from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Hernandez v. City of San Jose, 897 F.3d 1125, 1132 (9th Cir. 2018). "To determine whether an officer is entitled to qualified immunity, [the Court] ask[s], in the order [it] choose[s], (1) whether the alleged misconduct violated a [constitutional] right and (2) whether the right was clearly established at the time of the alleged misconduct." Id. Courts have the discretion to choose which of the two prongs of this test should be addressed first. Pearson v. Callahan, 555 U.S. 223, 236 (2009). A defendant must raise qualified immunity as an affirmative defense. Groten v. California, 251 F.3d 844, 851 (9th Cir. 2001). Dismissal under Rule 12(b)(6) is only appropriate where a court "can determine, based on the complaint itself, that qualified immunity applies." Id.

Here, Defendant appears to argue that, even if Plaintiff has stated a First Amendment claim against Defendant in his individual capacity, Defendant is entitled to qualified immunity as a state official because of his position as a board member of MBOC. ECF No. 25-1, Mot. at 9-11. However, as explained above, Plaintiff has failed to state a claim for violation of her First Amendment right to free speech. Thus, the Court declines to determine whether Defendant is entitled to qualified immunity because, at this juncture, such a determination is moot.

/ / /

Accordingly, the Court recommends that Defendant's MTD on the basis that Defendant is entitled to qualified immunity be denied as moot and without prejudice.

### D. Defendant's MTS Is Moot.

Finally, Defendant moves to strike the phrase "of Black Patients Matter" from the Complaint as it is "surplusage" and potentially conflates Plaintiff's alleged constitutional violation and injury with Black Patients Matter's constitutional rights and injuries, if any. ECF No. 26-1, MTS at 2-3. As the Court recommends that Plaintiff's Complaint be dismissed without prejudice, the Court then recommends denying Defendant's MTS as moot.

## V. RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the Court:

(1) ACCEPT the findings in this Report and Recommendation;

(2) GRANT Defendant's MTD;

(3) DENY Defendant's MTS as MOOT; and

(4) DISMISS Plaintiff's Complaint without prejudice.

DATED: March 15, 2021

HON. SHASHI H. KEWALRAMANI
United States Magistrate Judge

## NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file Objections as provided in Local Civil Rule 72 and review by the District Judge whose initials appear in the docket number. No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.